IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | C.R. NO. H-02-597 |
| | § | |
| DAVID BERMINGHAM | § | |
| GILES DARBY | § | |
| GARY MULGREW | § | |

ORDER

Pending are several motions and, after having carefully read the motions, responses, and replies to the responses, and after having heard oral arguments on the same at a pretrial conference on March 15, 2007, the Court orders as follows:

Defendants' Second Motion to Dismiss
the Indictment (Document No. 117),
Motion to Strike Surplusage (Document No. 119), and
Motion for Bill of Particulars (Document No. 120)

By Order dated December 6, 2006, the Court granted the Government's unopposed motion to strike the honest services theory from the Indictment. Defendants now move to dismiss the Indictment, alleging that (1) the honest services theory was void *ab initio*, and its inclusion impermissibly tainted the Indictment; (2) the remaining property theory underlying the charge of wire fraud under § 1343 is invalid; (3) the wire fraud statute, as applied to them, violates Defendants' rights to due process; and

(4) Defendants' extradition violated the United States-United Kingdom Extradition Treaty.

"An indictment is sufficient if it contains the elements of the offense charged, informs the defendant of the charges, and enables the defendant to plead acquittal or conviction and avoid future prosecutions for the same offense." <u>United States v. Hatch</u>, 926 F.2d 387, 391-92 (5th Cir. 1991); *see also* <u>United States v. Debrow</u>, 74 S. Ct. 113, 115 (1957) (holding an indictment must "clearly inform[ ] the defendants of that with which they [are] accused, so as to enable them to prepare their defense and to plead the judgment in bar of any further prosecutions for the same offense"). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." <u>United States v. Crow</u>, 164 F.3d 229, 234 (5th Cir. 1999); *see also* <u>United States v. Kay</u>, 359 F.3d 738, 742 (5th Cir. 2004).

(1)   <u>Redaction of the Honest Services Theory</u>

Based on their contention that breach of a foreign fiduciary duty is not cognizable as a scheme to defraud another of honest services, Defendants assert that the entire Indictment must be dismissed notwithstanding that the honest services theory of wire fraud and all references thereto have been stricken on the

Government's unopposed motion.[1]  Defendants assert that striking what they consider a legally invalid theory that is "intertwined" with the remaining theory of liability in effect constitutes an impermissible amendment to the Indictment "because it is impossible to tell whether the grand jury would have indicted based solely on the arguably valid theory."  *See* Document No. 117 at 26-27.  "The Fifth Amendment provides for criminal prosecution only on the basis of a grand jury indictment."  United States v. Doucet, 994 F.2d 169, 172 (5th Cir. 1993) (citing Stirone v. United States, 80 S. Ct. 270, 272 (1960)); *see also* U.S. CONST. Amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."). "It is a long-established principle of our criminal justice system that, after an indictment has been returned, its charges may not be *broadened* through amendment except by the grand jury itself." United States v. Young, 730 F.2d 221, 223 (5th Cir. 1984)(emphasis added).

––––––––––––––––––––

[1] Defendants quote a remark made from the bench speculating that the Government's purpose in deleting the honest services theory was not just to expedite the case but was "to take what may be a poisonous allegation out of the indictment."  That remark should not be used to imply that the Court has reached any judgment that the honest services theory originally indicted in this case was not a viable theory of wire fraud under the facts recited in the Indictment, which are quite different from the record evidence in United States v. Brown, 459 F.3d 509 (5th Cir. 2006). Defendants' arguments rest on the premise that "honest services" was an invalid theory, and the Court's analysis that follows largely assumes--but certainly does not decide--that it was invalid.

Equally well-established, however, is that the *narrowing* of an indictment to exclude one or more theories of liability does not violate the Fifth Amendment so long as the remaining allegations independently charge a cognizable offense.  *See* <u>United States v. Miller</u>, 105 S. Ct. 1811, 1815-17 (1985)(citing, *inter alia*, <u>Ford v. United States</u>, 47 S. Ct. 531 (1927); <u>Salinger v. United States</u>, 47 S. Ct. 173 (1927)).  In <u>Miller</u>, the Supreme Court upheld a mail fraud conviction based on a theory narrower than the one set forth in the indictment.  *See* <u>id.</u> at 1819-20.  The indictment in <u>Miller</u> charged the defendant with fraudulent acts in connection with a burglary at his place of business, and alleged that the defendant defrauded his insurer "both by consenting to the burglary in advance and by lying to the insurer about the value of his loss." <u>Id.</u> at 1813.  The proof at trial supported only the allegation that the defendant inflated the value of his loss.  The jury found the defendant guilty, and the defendant appealed.  The Court of Appeals vacated the conviction, holding that the defendant's Fifth Amendment right to be tried on a grand jury indictment had been violated because "it is quite possible that the grand jury would have been unwilling or unable to return an indictment based solely on Miller's exaggeration of the amount of his claimed loss even though it had concluded that an indictment could be returned based on the overall scheme . . . ."  *See* <u>id.</u> (quoting <u>United States v.</u>

4

Miller, 715 F.2d 1360, 1362-63 (9th Cir. 1983), *modified*, 728 F.2d 1269 (1984)).  The Supreme Court expressly rejected this rationale:

> The Court has long recognized that an indictment may charge numerous offenses or the commission of any one offense in several ways.  As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.

Id. at 1815 (collecting cases).  Moreover, unlike the *broadening* of the potential bases for conviction, the *narrowing* of an indictment does not impair the "'notice' related concerns" underlying the grand jury requirement--i.e., providing a defendant fair notice of the charges, and facilitating the pleading of double jeopardy as a bar to subsequent prosecutions.   Id. at 1814.   Thus, "where an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment."   Id. at 1819-20 (discussing Salinger, 47 S. Ct. at 174-75).

Defendants contend that Miller is inapposite because it does not address the "completely separate question" of whether the inclusion of a "legally invalid theory" intertwined in a single count with a remaining, "legally valid theory" violates the Fifth Amendment.  Document No. 138 at 7.  Miller, however, relied heavily upon Ford v. United States, 47 S. Ct. 531 (1927) in which the

5

indictment alleged that defendants conspired to commit violations of two federal statutes and a treaty, although violation of the treaty did not constitute a cognizable offense.  The court agreed that "the treaty creates no offense against the law of the United States," but upheld the conviction, holding that the charge of violating the treaty "is merely surplusage and may be rejected." Id.; *see also* Miller, 105 S. Ct. at 1815 (quoting Ford).  Miller instructs that the proper focus is not whether the grand jury may have been affected by the inclusion of now-abandoned theories of liability, or whether the redacted allegations are legally or factually insufficient to state a claim.  Instead, the central inquiry is whether the *remaining* allegations sufficiently allege a viable, independent offense.[2]

---

[2] Apart from factual differences, the Court finds unpersuasive two district court cases relied upon by Defendants.  United States v. D'Alessio, 822 F. Supp. 1134, 1145-46 (D.N.J. 1993), neither cites nor discusses Miller.  United States v. Welch, 248 F. Supp.2d 1061, 1065-66 (D. Utah 2001), *rev'd on other grounds*, 327 F. 3d 1081 (10th Cir. 2003), has one "see also" reference to Miller, without any discussion of it, but includes a benign quotation from Ex Parte Bain, 7 S. Ct. 781 (1887), to explain why a court may not substantively amend an indictment.  Welch, at 1065, n. 6.  In Miller, however, the Supreme Court discussed the holdings of Bain at length, and demonstrated that subsequent caselaw had superseded any holding of Bain that it is unconstitutional to drop from an indictment allegations that are unnecessary to an offense "that is clearly contained within it."  Miller, 105 S. Ct. at 1819.  The Court added, "To avoid further confusion, we now explicitly reject that proposition."  Id.  So it is here: dropping the honest services theory in no way requires dismissal of the entire Indictment, which clearly contains a separate charge of wire fraud to deprive another of money or property.

6

Here, the allegations stricken from the Indictment eliminate a theory of honest-services wire fraud and leave undisturbed a cognizable theory of wire fraud under § 1343 to deprive another of money or property. As in <u>Miller</u>, Defendants complain "not that the indictment failed to charge the offense" for which they now face prosecution, "but that the indictment charged more than was necessary." <u>Miller</u>, 105 S. Ct. at 1817. The redaction of the honest services theory under § 1346, whether based on breach of a "foreign fiduciary duty" or not, does not impermissibly amend the Indictment.

(2) <u>Deprivation of Money or Property</u>

Under <u>Miller</u>, the indictment will stand if it alleges a viable property theory under § 1343. Defendants assert that the remaining property theory fails because "[n]othing in the text, structure, or history of [§ 1343], or case law interpreting it, shows that the statute reaches an alleged scheme by foreign nationals to deprive their foreign employer of property based on a breach of an (unspecified) fiduciary duty arising (if at all) under foreign law." Document No. 138 at 4. This argument is foreclosed by the Supreme Court's decision in <u>Pasquantino v. United States</u>, 125 S. Ct. 1766 (2005). The defendants in <u>Pasquantino</u> were tried and convicted under § 1343 for smuggling alcohol into Canada to avoid payment of Canadian excise taxes. The Court upheld the

7

convictions, explaining that the requisite "domestic element" of § 1343 is satisfied if at least some part of the scheme to defraud occurs within the United States, and the scheme is furthered by use of the domestic wires. *See* Pasquantino, 125 S. Ct. at 1780-81; *see also* United States v. Trapilo, 130 F.3d 547, 552 (2d Cir. 1997) ("The identity and location of the victim, and the success of the scheme, are irrelevant."); United States v. Cavin, 39 F.3d 1299, 1305 (5th Cir. 1994) ("Mail and wire fraud consist of use of the mail or wires, respectively, in furtherance of a scheme to defraud."). Stated differently, the "broad language of the wire fraud statute" encompasses any scheme to defraud that is advanced through use of U.S. interstate wires, without regard to whether the scheme succeeds, or the nationality of the victim or intended victim, or whether the scheme necessarily requires proof and/or interpretation of foreign law, if the scheme has as its purpose depriving a foreign corporation or person of valuable property interests as defined by foreign law. *See* Pasquantino, 125 S. Ct. at 1780-81 & n.13.

Defendants, as employees of GNW principally responsible for representing GNW in its dealings with Swap Sub, are alleged to have participated in a complex scheme to defraud their own employer by engaging in the following conduct within the United States: (1) colluding with Enron insiders in Houston, Texas to "recommend[ ] to GNW that it sell its interests in Swap Sub for

only $1 million, when the defendants knew GNW's interest was worth far more, and when the defendants were planning fraudulently to convert the balance of GNW's interest to themselves and others"; (2) exercising an option to purchase an interest in the limited partner of Southampton, L.P. in order to consummate a subsequent re-sale of the Swap Sub interest to Enron for $30 million-- $7,352,626 of which was divided equally among Defendants; and (3) using wire communications in interstate and foreign commerce to transmit documents related to the transactions and to transfer the illicit funds.  Under Pasquantino, Defendants' alleged use of U.S. interstate wires to execute a scheme to defraud perpetrated largely in the United States provides the requisite "domestic" element of the offense and, even if proof and/or interpretation of foreign law is necessary to prove that the fraudulent scheme was designed to deprive GNW of its valuable property interests, what is alleged on the face of the Indictment is sufficient to allege wire fraud under § 1343.

Defendants contend that Pasquantino does not control because, there, the loss to Canada was a "straightforward economic interest,"--i.e., the loss of tax money--rather than the "breach of a foreign fiduciary duty."  This understates the fraud actually alleged in the Indictment, which is not mere breach of a fiduciary duty.  Indeed, the mere breach of a fiduciary duty to one's employer, in the absence of some detriment, does not constitute

9

fraud under the mail fraud statute or, by implication, under
§ 1343.  *See* United States v. Brown, 459 F.2d 509, 519 (5th Cir.
2006) (citing United States v. Ballard, 663 F.2d 534, 540 (5th Cir.
1981), *as modified on rehearing*, 680 F.2d 352 (5th Cir. 1982)).
Already stricken from the Indictment in this case on the
Government's unopposed motion are allegations that Defendants
deprived another of the "intangible right of honest services" under
§ 1346, which were the only allegations that arguably on their face
might not imply actual detriment.  What remains charged in the
Indictment under § 1343, however, is a scheme by which Defendants
fraudulently deprived GNW and obtained for themselves, in
complicity with Enron insiders who were their accomplices, GNW's
tangible property interests having a value of more than $7 million.
The fact that defrauding one's own employer of its money or
property entails also a breach of fiduciary duty does not diminish
GNW's "straightforward economic interest" in realizing for itself
the value of its property interest just as Canada had a
"straightforward economic interest" in realizing its tax revenues.
In other words, the holding in Pasquantino did not depend upon
those defendants *not* owing a fiduciary duty to the victim because
they were not employees of the Canadian customs authority.  Section
1343 proscribes the use of the wires to execute schemes or intended
schemes to defraud victims of money or property, and "the broad
language of the wire fraud statute," as Pasquantino put it, draws

10

no distinction on whether those charged with the crime are also employees of--and owe fiduciary duties to--the intended victim. In fact, numerous convictions under the mail and wire fraud statutes have been upheld where the employer was shown to sustain a detriment from its employee's fraud, sometimes involving deprivation of property even without a direct monetary loss. *See* Carpenter v. United States, 108 S. Ct. 316, 321 (1987)(affirming an employee's conviction under § 1343 for appropriation of his employer's confidential information); United States v. Rico Indus., Inc., 854 F.2d 710, 714 (5th Cir. 1988)(citing Carpenter); United States v. Fagan, 821 F.2d 1002, 1009-10 & n.6 (5th Cir. 1987); *see also* Ranke v. United States, 873 F.2d 1033, 1037-39 (7th Cir. 1989); United States v. Kerkman, 866 F.2d 877, 879-80 (6th Cir. 1989).

In sum, Pasquantino controls. The Indictment, as redacted, alleges a cognizable theory of deprivation of property under § 1343 notwithstanding that foreign nationals are charged with a scheme intended to defraud a foreign corporation that was their employer, the domestic element of the alleged crime under § 1343 being Defendants' use of U.S. interstate wires to execute the scheme inside the United States.

(3)  Due Process

Defendants additionally contend that § 1343 is unconstitu-tionally vague as applied to them because as "British nationals

living and working in London" they "lacked constitutionally adequate notice that their alleged failure to comply with their duties to their British employers . . . could subject them to criminal liability in the United States." Document No. 117 at 35. "'It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . .'" City of Chicago v. Morales, 119 S. Ct. 1849, 1859 (1999) (quoting Giaccio v. Pennsylvania, 86 S. Ct. 518, 520 (1966)). "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 103 S. Ct. 1855, 1858 (1983); accord United States v. Gray, 96 F.3d 769, 776 (5th Cir. 1996). Whether a statute is void for vagueness requires an examination of the facts of the case at hand. See Gray, 96 F.3d at 776 (citing United States v. Mazurie, 95 S. Ct. 710, 714 (1975)).

Defendants' contention largely reprises their argument that the scope of § 1343 was not intended to penalize the violation of foreign fiduciary duties, which the Court has considered above and rejected. It has long been recognized that an employee's scheme to defraud his employer of a valuable property right, at least part of which occurs within U.S. borders, and which is furthered through

use of domestic wires, is punishable as wire fraud under § 1343 without regard to the foreign identity or location of the victim, or the origin or nature of the fraud.  Furthermore,

> [t]he fraudulent aspect of the scheme to "defraud" is measured by a nontechnical standard.  Law puts its imprimatur on the accepted moral standards and condemns conduct which fails to match the "reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society."  This is indeed broad.  For as Judge Holmes once observed, "the law does not define fraud; it needs no definition; it is as old as falsehood and as versable as human ingenuity."

Blachly v. United States, 380 F.2d 665, 671 (5th Cir. 1967)(quoting Gregory v. United States, 253 F.2d 104, 109 (5th Cir. 1958); Weiss v. United States, 122 F.2d 675, 681 (5th Cir. 1941), *cert. denied*, 62 S. Ct. 300 (1942)) (internal citations omitted); *see also* McNally, 107 S. Ct. at 2881 (defining "fraud" under § 1343 as "the deprivation of something of value by trick, deceit, chicane or overreaching").  Thus, "[t]o show a scheme to defraud, all that must be shown is that the scheme is 'reasonably calculated to deceive persons of ordinary prudence and comprehension.'"  United States v. Toney, 605 F.2d 200, 205 (5th Cir. 1979)(quoting United States v. Netterville, 553 F.2d 906, 909 (5th Cir. 1977), *cert. denied*, 98 S. Ct. 719 (1978)).

In this case, Defendants, who were officials entrusted to represent their employer's affairs, are alleged to have used knowledge gained in that capacity to devise in complicity with

Enron executives a scheme to defraud their employer of and to appropriate for themselves a valuable property interest belonging to their employer.  The alleged conduct was reasonably calculated, indeed *intended*, to deceive GNW of Swap Sub's value and to conceal their naked self-interest in recommending its sale at a grossly undervalued price--a conclusion that is reinforced by their structuring of a complex series of transactions designed to hide their receipt of over $7 million in proceeds that might otherwise have gone to their employer.  Viewed against the background of the established case law, an ordinary person would have fair warning that this conduct is actionable as a "scheme to defraud" another of "money or property," and that its execution or attempted execution by use of U.S. interstate wires would transgress federal law.  *See, e.g.*, United States v. Brumley, 116 F.3d 728, 732 (5th Cir. 1997) (en banc) ("Constructions of a statute announced by the Supreme Court or lower courts can give citizens fair warning, even if the cases are not 'fundamentally similar.'")(quoting United States v. Lanier, 117 S. Ct. 1219, 1225 (1997)).  Accordingly, § 1343 is not void for vagueness as applied to Defendants.

(4)   The United States-United Kingdom Extradition Treaty

The Court finds no violation by the Government of its duty of good faith under the United States-United Kingdom Extradition Treaty by presenting to the U.K. an Indictment that included the

honest-services fraud allegations, and the subsequent striking of that allegation, in the aftermath of new decisional law or for mere simplification of the charges, does not require dismissal of the Indictment which, as seen above, validly charges wire fraud under § 1343, just as it did when Defendants were extradited.

For the foregoing reasons, Defendants' Second Motion to Dismiss the Indictment (Document No. 117) is DENIED.

Defendants' Motion to Strike Surplusage from the Indictment (Document No. 119) and Defendants' Motion for a Bill of Particulars (Document No. 120) also are both DENIED.

<u>Defendants' Motion for Leave to File to File Motions for the Issuance of Fed R. Crim. P. 17(c) Subpoena Duces Tecum on an Exparte Basis (Document No. 121) and Defendants' Ex Parte Motion for the Issuance of Fed. R. Crim P. 17(c) Subpoena Duces Tecum (Document No. 122)</u>

Defendants' Motion for Leave to File Motions for the Issuance of Fed. R. Crim. P. 17(c) Subpoena Duces Tecum (Document No. 121) is GRANTED with respect to filing under seal the particular motion (Document No. 122) that accompanied the foregoing Motion for Leave.

Defendants' Ex Parte Motion for the Issuance of Fed. R. Crim P. 17(c) Subpoena Duces Tecum (Document No. 122, filed under seal) urges the Court to request international legal assistance from the United Kingdom Central Authority, and the Serious Fraud Office, to obtain production of broad, sweeping, and highly generalized, non-specific documents.  For examples, "All communications (including

e-mail) that were sent or received" by the three Defendants plus two other individuals between May 1, 1999, through June 30, 2000; "All communications (including e-mail) that were sent or received" by six named individuals (none being a defendant) from May 1, 1999, through June 30, 2000 "relating to Enron; LJM; Campsie; CSFB; Birmingham, Darby, or Mulgrew; NatWest's defense strategy" regarding a hostile takeover, and a variety of other subjects; "All documents" for the past *eight* years "relating to any valuation, audit, or review" of three different entities; "All reports of any internal or external investigations" relating to certain subjects for the past *eight* years; "The complete personnel files [for each of Defendants]"; "All expense reports . . ."; "All telephone records or audio recordings of telephone calls . . ."; "Written or electronic diary or calendar records," for a period of six months for each of seven different individuals, including the three Defendants; "All . . . Management Committee minutes" for a period of more than a year; "All documents" relating to the "various asset sales" of an entity over a period of two years; "All documents" relating to a bonus plan in one year; "All documents" for a two-year period relating to "any compensation, remuneration, bonus packages or schemes, bonuses, or any other payments" received by two individuals, neither of whom is a defendant; "All documents" relating to termination of another individual's employment; "All Steering Committee minutes" from an entity for a six-year period;

16

"All internal . . . correspondence and memorandum" of an entity for more than six years "relating to any fraud allegations" against Defendants; "All documents" for more than a year regarding certain policies of certain business entities; and "All witness statements or depositions" given by "any" officer or employee of a company relating to certain subjects for the past seven years.

In order to require production prior to trial under Rule 17(c) of the Federal Rules of Criminal Procedure, the moving party must show that "(1) the subpoenaed document is relevant, (2) it is admissible, and (3) it has been requested with adequate specificity." United States v. Arditti, 955 F.2d 331, 345 (5th Cir. 1992); *see also* United States v. Nixon, 94 S. Ct. 3090, 3103 (1974); United States v. Morris, 287 F.3d 985, 991 (10th Cir. 2002); United States v. Hardy, 224 F.3d 752, 755-56 (8th Cir. 2000); United States v. Hang, 75 F.3d 1275, 1283-84 (8th Cir. 1996); United States v. Fowler, 932 F.2d 306, 310-12 (4th Cir. 1991). If the Court authorizes the production in advance of trial, the subpoenaed documents are to be produced in Court. FED. R. CRIM. P. 17(c); *see also* Bowman Dairy Co. v. United States, 71 S. Ct. 675, 678 n. 5 ("[T]here is a provision in [Rule 17(c)] that the court may, in the proper case, direct that [the subpoenaed material] be brought *into court* in advance of the time that they are offered in evidence . . . ." (quoting Statement of Mr. G. Aaron Youngquist, Member of Advisory Committee, Federal Rules of Criminal

17

Procedure, Proceedings of the Institute on Federal Rules of Criminal Procedure (New York University School of Law, Institute Proceedings, Vol. VI, 1946), pp. 167-168) (emphasis added)).

After having carefully reviewed Defendants' Motion under seal for issuance of subpoena under Rule 17(c), the Court finds that Defendants have failed to meet the requirements of Rule 17(c) by identifying specific documents shown to be both relevant and admissible in evidence. *See* <u>Arditti</u>, 955 F.2d at 345 (Defendant "has failed to establish with sufficient specificity the eviden-tiary nature of the requested materials."). Instead, Defendants' proposed subpoena duces tecum repeatedly asks for "all" of whatever it is that follows, and what follows are listings of documents and other things on broad, sweeping subjects, sometimes over periods of months and sometimes over periods of years. This comprehensive request for *all* documents, records, minutes, or whatever else, is made without any showing that they or any of them are relevant, or that they or any of them would be admissible in evidence. It is simply a broad discovery request such as may be used, or at least attempted, in civil case discovery. Accordingly, because the motion does not meet the exacting requirements of Criminal Procedure Rule 17(c) and is an attempt "to use the subpoena duces tecum as a discovery device, which it is not," <u>Arditti</u>, 955 F.2d at 346 (quoting <u>United States v. Nixon</u>, 777 F.2d 958, 968-69 (5th Cir. 1985)), it is

18

ORDERED that Defendants' Ex Parte Motion for Issuance of Fed. R. Crim. P. 17(c) Subpoena Duces Tecum (Document No. 122) is in all things DENIED.

Defendants' Motion for Brady Material (Document No. 123)

The Government agreed in open Court, as it has in its written filings, that it must fulfill its responsibilities under Brady, Giglio, and Napue. The Court accepted the Government's agreement to produce any Brady material that comes to its attention.

Defendants' further request that the Government be required to specify from out of its production of voluminous materials to Defendants any particular information or material that is exculpatory, favorable to the accused, or that may be used to impeach a Government witness, goes beyond Brady. The Government is not required to identify evidence from out of its production to Defendants that may be broadly supportive of Defendants. *See* United States v. Runyan, 290 F.3d 223, 245-46 (5th Cir. 2002); United States v. Mulderig, 120 F.3d 534, 541 (5th Cir. 1997); United States v. Mmahat, 106 F.3d 89, 94 (5th Cir. 1997)("[T]here is no authority for the proposition that the government's Brady obligations require it to point the defense to specific documents within a larger mass of material that it has already turned over."), *cert.* denied, 118 S. Ct. 136 (1997), *abrogated on other grounds by* United States v. Estate of Parsons, 367 F.3d 409 (5th

19

Cir. 2004).  In view of the Government's acknowledgment of its duty and agreement to produce <u>Brady</u> material in accordance with <u>Brady</u> and its progeny, Defendants' Motion for Brady Material (Document No. 123) is DENIED as moot.

<u>Defendants' Motion for Jencks Material (Document No. 124)</u>

It is ORDERED that the Government and Defendants mutually exchange their respective Jencks Act material 30 days in advance of trial.  To this extent, Defendants' Motion for Jencks Material (Document No. 124) is GRANTED, and otherwise DENIED.

<u>Defendants' Request for Notice of Intent to
Use 404(b) Evidence (Document No. 125)</u>

The Government agreed to give notice to Defendants of any Rule 404(b) evidence 60 days in advance of trial providing, however, that the United States shall not be deemed to have waived its right to present Rule 404(b) evidence that it later learns about within 60 days of trial.  Upon learning of any such evidence within the 60-day period, the Government shall promptly supplement its Rule 404(b) notice as soon as it shall have verified the new information and determined to offer the same at trial.  The Court approves this procedure and, to that extent, Defendants' Request for Notice of Intent to Use 404(b) Evidence (Document No. 125) is GRANTED in part, and otherwise DENIED.

<u>Opposed United States's Motion to Compel</u>
<u>Reciprocal Discovery (Document No. 96)</u>

The Government's Motion to Compel Reciprocal Discovery (Document No. 96) is GRANTED, and it is ORDERED that Defendants by May 15, 2007, permit the Government to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if (i) the item is within Defendants', or any individual Defendant's, possession, custody or control; and (ii) Defendants or any one of Defendants intend to offer the item(s) in any Defendant's case-in-chief at trial.

<u>Expert Witnesses/Reports</u>

It is ORDERED that the Government and Defendants by May 15, 2007, shall each identify any expert witnesses that they intend to call in their case-in-chief to provide testimony under Rules 702, 703 or 705 of the Federal Rules of Evidence, identifying the same by a report, listing the qualifications of each expert, supplying each opinion the expert will present, and the basis for it.

If any party expects to call expert witnesses in rebuttal to expert opinions disclosed in accordance with the preceding paragraph, each such party shall by July 1, 2007, identify those expert witnesses to be offered in rebuttal by a report, listing the

qualifications of each expert, supplying each opinion the expert will present, and the basis for it.

### Jury Questionnaire

Not less than two weeks in advance of the next Pretrial Setting, and if the parties desire to use a supplemental jury questionnaire for jury selection, the parties shall submit to the Court an agreed proposed questionnaire, not to exceed one letter size page in length, with the five or six questions that would be most helpful in expediting the formation of a qualified panel of citizens for voir dire.

### Pretrial Conference

Date:     *April 30, 2007*
Time:     *5:00 p.m.*

*Courtroom 11D*
*U.S. Courthouse & Federal Building*
*515 Rusk Avenue*
*Houston, Texas 77002*

It is SO ORDERED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this  5th  day of April, 2007.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE